FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★  APR 1 – 2011  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

UNITED STATES OF AMERICA,                    :
                                             :
                              Plaintiff,     :     **MEMORANDUM**
                                             :     **DECISION AND ORDER**
                 - against -                 :
                                             :     CR-08-240 (BMC)(RER)
CHRISTOPHER CURANOVIC, et al.,               :
                                             :
                              Defendants.    :
                                             :

-------------------------------------------------------- X

By letter dated March 9, 2011, the Government advised the Court of potential conflicts arising from Joseph Corozzo, Jr.'s representation of defendant Dino Saracino. For the following reasons, I find that the conflicts identified by the Government are unwaivable, and I therefore disqualify Mr. Corozzo from representing Mr. Saracino.

## BACKGROUND[1]

The Government identified two potential conflicts involving Mr. Corozzo. First, the Government claims that Mr. Corozzo arranged a meeting between an individual who is now a cooperating witness and a member of the Colombo organized crime family. As a result, the Government believes Mr. Corozzo may be a co-conspirator of Mr. Saracino, and Mr. Corozzo may become an unsworn witness at Mr. Saracino's trial. Second, Mr. Corozzo is the subject of a criminal investigation being conducted by the United States Attorney's Office for the Eastern District of New York.

---

[1] The following facts are drawn from the Government's letter dated March 9, 2011, and from the hearing held on March 25, 2011.

Mr. Saracino is charged with, inter alia, conspiring to make extortionate extensions of credit. Prior to his arrest, Mr. Saracino allegedly arranged for another member of the Colombo family to continue his loansharking business. This member, identified as CW-1, is now cooperating with the Government. CW-1 will testify that Mr. Saracino instructed him to take over the extortion business charged in the indictment if the Government arrested Mr. Saracino. Presumably, Mr. Saracino intended CW-1 to maintain the business for Mr. Saracino's eventual benefit. CW-1 informed the Government that Mr. Saracino also told Gaetano Gallo (a Colombo associate) the identities of his loansharking customers.

In the summer of 2009, a Colombo associate told CW-1 that Anthony Russo (a Colombo family member) had "claimed" several of Mr. Saracino's crewmembers, including Gallo. CW-1 also learned that, contrary to Mr. Saracino's instructions that CW-1 should run the business, Russo had taken over Mr. Saracino's loansharking business and was keeping one-third of the proceeds for himself and splitting the remaining two-thirds between Gallo and Mr. Saracino. Finally, CW-1 learned that Russo planned to contact a soldier in the Gambino crime family because Gallo complained about Russo's actions.

CW-1 thereafter met with Mr. Corozzo (after Mr. Corozzo began representing Mr. Saracino). CW-1 informed Mr. Corozzo of Russo's actions, and Mr. Corozzo recommended that CW-1 meet with Theodore Persico, Jr. (a Colombo family member), presumably to work out an arrangement regarding Mr. Saracino's loansharking business. Mr. Corozzo agreed to set up the meeting.

That night, CW-1 passed a message to Mr. Saracino, who was incarcerated in the Brooklyn Metropolitan Detention Center. In the message, CW-1 told Mr. Saracino that "A.R. [a reference to Russo] is now going to see your son [a reference to Gallo]." According to CW-1,

2

Mr. Saracino responded, "What are they looking to take my money?" CW-1 interpreted the response to mean that Mr. Saracino had not authorized Russo to take over his loansharking business.

The next day, CW-1 met with Persico, Jr. at Mr. Corozzo's residence. Mr. Corozzo waited until both men were present and then excused himself. Persico, Jr. advised CW-1 that CW-1 could keep the loansharking proceeds if he collected the payments, but that a portion of any other criminal proceeds generated by Mr. Saracino's crewmembers belonged to Russo and Persico, Jr., notwithstanding any preference Mr. Saracino might have.

As a result of the information provided by CW-1, the United States Attorney's Office for the Eastern District of New York is now conducting an investigation into Mr. Corozzo's potential criminal activities. The Government's letter does not describe the details or scope of this investigation. The Court, however, held a hearing on March 25, 2011 to, inter alia, address the potential conflicts, and the Government acknowledged that it believes Mr. Saracino's alleged loansharking business continued after Mr. Saracino's arrest, that CW-1 implicated Mr. Corozzo as being involved in that same loansharking business, and that it intends to offer evidence of Mr. Corozzo's involvement at Mr. Saracino's trial (although the Government stated that it would not refer to Mr. Corozzo by name if he were allowed to continue representing Mr. Saracino).

At the hearing, I appointed an independent CJA lawyer as Curcio counsel for Mr. Saracino. See United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). This attorney discussed the potential conflicts with Mr. Saracino, and Mr. Saracino informed this attorney that he was willing to waive them. The Government took the position that the conflicts it identified were waivable, but it acknowledged that the question was a close one. For his part, Mr. Corozzo declined to take a position as to whether the conflicts were waivable, but he informed the Court

3

that if the Court found them waivable, he believed that he could represent Mr. Saracino without compromising his client's interests.

## DISCUSSION

Any time the Court is "sufficiently apprised of even the possibility of a conflict of interest" it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Ordinarily, "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence [is] left to the defendant and not . . . dictated by the government." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003). If, however, "the court determines that counsel has an actual conflict that is so severe as to indicate per se that the rendering of effective assistance will be impeded, or is analogous to such a conflict in 'breadth and depth,' the court must . . . disqualify counsel." Id.

An attorney's conflict is unwaivable "when [he] is implicated in the crimes of his . . . client since, in that event, the attorney cannot be free from fear that a vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrongdoing." United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993) (internal quotation marks and citation omitted). For this per se rule to apply, "the attorney's alleged criminal activities must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." Id. When a Government witness implicates an attorney in his client's crimes, I must treat the allegations "as 'true' for purposes of constitutional analysis, thereby invoking the per se rule." Id.

4

Here, CW-1, a Government witness, has implicated Mr. Corozzo in the ongoing loansharking operation that forms the basis for one of the charges Mr. Saracino currently faces (conspiracy to make extortionate extensions of credit). Because CW-1 is a Government witness, for purposes of this Decision and Order I must treat his allegations against Mr. Corozzo as true.

The Government takes the position that Mr. Corozzo's conflict is waivable, albeit barely; however, it acknowledges that the loansharking operation is ongoing and that it has taken this position, in part, because the scheduled trial date was approaching (it has now been adjourned for reasons unrelated to the issue here). Of course, the timing of when the conflict arises is immaterial to my determination of whether it is waivable. See id. at 606, 614 (holding that a conflict brought to the court's attention in the middle of trial was unwaivable). Rather, I must disqualify Mr. Corozzo if CW-1's allegations are sufficiently related to Mr. Saracino's alleged criminal activity.

The only potentially valid basis for the Government's conclusion that the conflict is waivable is that the meeting between Mr. Corozzo and CW-1 occurred about a year after Mr. Saracino's arrest, and therefore the conspiracy charged in the indictment does not cover the time period when this meeting occurred. By this reasoning, Mr. Corozzo's facilitation of Mr. Saracino's effort to pass the extortion business to CW-1 by arranging the meeting between CW-1 and Persico, Jr. is not "sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." The Government's position is undermined, and the substantial relationship between the charge against Mr. Saracino and the allegations against Mr. Corozzo is demonstrated, by the fact that the Government intends to have CW-1 testify about his interactions with Mr. Corozzo and Persico, Jr. at the trial of this case as further proof of the extortion conspiracy.

5

In addition to this practical contradiction, I think the Government's technical distinction ignores the conflicting tangible interests of both Mr. Corozzo and Mr. Saracino. The extortion business that was the subject of the discussion between Mr. Corozzo and CW-1, and then, as a result of Mr. Corozzo's good offices, between CW-1 and Persico, Jr., is the very same business charged in the indictment. Although the Government proposes to camouflage Mr. Corozzo's involvement by having CW-1 refer to him as "a lawyer," that artifice does nothing to diminish Mr. Corozzo's self-interest.

I mean to cast no aspersions on Mr. Corozzo's performance of his duty of loyalty to his client, but Mr. Corozzo, himself under investigation, is in a position to be of substantial assistance to the Government in this case just by confirming CW-1's description of the meeting. Although I do not know for certain that the Government's ongoing investigation of Mr. Corozzo includes his role in helping to implement Mr. Saracino's directions with regard to this extortion scheme, the fact remains that Mr. Corozzo has a strong interest in self-protection that could readily manifest itself in a way that is directly contrary to Mr. Saracino's interests. This kind of client-conflicting self-interest is perhaps the best indicator of an unwaivable conflict. See Perez, 325 F.3d at 132 (Raggi, J., concurring) ("The danger arising from representation by a counsel who has been implicated in a related criminal activity by a government witness is of a different order of magnitude . . . . Advice as well as advocacy is permeated by counsel's self-interest, and no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation.").

Under these circumstances, Mr. Corozzo "cannot be free from fear that a vigorous defense should lead the prosecutor or the trial judge to discover evidence of [his] own

wrongdoing." This type of conflict is unwaivable, and I must therefore disqualify Mr. Corozzo from representing Mr. Saracino.

Moreover, even if I were to find that the per se rule does not apply and that this conflict is waivable, I would still exercise my discretion and deny Mr. Saracino's waiver. First, I believe that no "rational defendant would knowingly want to be represented by" an attorney with Mr. Corozzo's conflicts. United States v. Jones, 381 F.3d 114, 120 (2d Cir. 2004). The problems associated with Mr. Corozzo's continued representation discussed above are sufficient to support this conclusion. See United States v. Arrington, 867 F.2d 122, 128-29 (2d Cir. 1989). In addition to those problems, Mr. Corozzo will potentially be in a position to contradict CW-1's testimony at trial. If Mr. Corozzo continues as Mr. Saracino's attorney, he would, of course, be unable to testify on Mr. Saracino's behalf, and, as the Second Circuit has recognized, "a witness's blatantly false allegations provide a rich source for cross-examination designed to cast doubt on the witness's credibility." Fulton, 5 F.3d at 610. Although this conflict is ordinarily waivable, its presence here further supports my belief that Mr. Saracino should not be allowed to waive Mr. Corozzo's identified conflicts.

Second, in addition to my duty to ensure that Mr. Saracino receives conflict-free representation, I also have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692 (1988); see also Jones, 381 F.3d at 119. If I were to allow Mr. Corozzo to continue representing Mr. Saracino, it is plausible that the jury would figure out the Government's veiled references to Mr. Corozzo thereby imprinting Mr. Saracino's trial with the taint of impropriety. And, even if the jurors did

not figure it out, the necessary disclosure of the conflict to the public would leave that appearance of impropriety exposed.

Finally, I note that although Mr. Saracino originally retained Mr. Corozzo to represent him, he has recently filed a financial affidavit seeking representation under the Criminal Justice Act. Although Mr. Corozzo is not a member of this Court's CJA panel, I previously indicated that I would likely appoint Mr. Corozzo to represent Mr. Saracino as CJA counsel. The basis for that decision was efficiency, but that was before the conflict addressed here was known and before I adjourned the trial. A defendant has no right to choose a particular CJA counsel, see United States v. Gonzalez-Lopez, 548 U.S. 140, 151, 126 S. Ct. 2557 (2006), and since I can structure the scheduling of the case to make sure that Mr. Saracino is not prejudiced by the appointment of new CJA panel counsel, this further weighs in favor of conflict avoidance.

## CONCLUSION

Mr. Corozzo is disqualified from representing Mr. Saracino. Replacement counsel from the CJA panel will be separately appointed.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
      March 31, 2011