UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA


       -against-                               08-CR-0240(S-6) (BMC)


THOMAS GIOELI AND DINO SARACINO,


                     Defendants.
--------------------------------------------------------X


## MOTIONS FOR RELIEF PURSUANT TO
## FEDERAL RULES OF CRIMINAL PROCEURE 29 AND 33

Samuel M. Braverman, Esq.
Attorney for Dino Saracino
901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395
Email: braverlaw@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA


        -against-                              08-CR-0240(S-6) (BMC)

                                                    AFFIRMATION OF COUNSEL


THOMAS GIOELI AND DINO SARACINO,


                          Defendants.
-------------------------------------------------------X

        SAMUEL M. BRAVERMAN, Esq., an attorney admitted to practice before this Court, affirms under penalty of perjury the following:

        1. I am the attorney of record for the defendant Dino Saracino. As such, I am fully familiar with the facts and circumstances of this matter. I make this affirmation and submit the attached memorandum of law in support of defendant's motions for relief pursuant to F.R.Cr.P. 29 and 33.[1]

        2. All allegations of fact are made based upon personal knowledge and a review of the record, unless stated to be made upon information and belief (in which case the grounds for such belief shall be stated.)

        3. As the Court is fully familiar with the facts of the trial and record, only facts necessary to address the motion are restated.

        4. Defendant Saracino renews all the previous motions made on these issues and incorporates the arguments made in support thereof.

        5. Defendant Saracino joins the motion for relief filed June 29, 2012 (1:08-cr-00240-BMC-RER: Document 1606) by counsel for Gioeli at argument points 3 (statute of limitations and vagueness of the Racketeering Conspiracy) and 5 (regarding the Orena Faction conspiracy).

DATED:        Bronx, New York
                 June 30, 2012

                                               s/Sam Braverman
                                             Samuel M. Braverman, Esq.

---

[1] Acknowledgment is gratefully made to Jennifer B. Arlin, Esq. for her assistance in the preparation of this motion.

Attorney for Dino Saracino
901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395
Email: braverlaw@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA


              -against-                        08-CR-0240(S-6) (BMC)


THOMAS GIOELI AND DINO SARACINO,


                 Defendants.
--------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO F.R.Cr.P. 29

### Introduction

Defendant moves this Court for a judgment of acquittal, pursuant to F.R.Cr.P. 29(a) and (c)(1), on the various counts of which he was convicted after jury trial, based upon the insufficiency of the evidence adduced at trial by the Government. Because no rational trier of fact could conclude beyond a reasonable doubt that the defendant was guilty of the several charges, even viewing the evidence in a light most favorable to the Government, the convictions must be set aside and a judgment of acquittal must be entered in their stead.

### A.  Standard of Review for a Rule 29 Motion for a Judgment of Acquittal

Rule 29(a) states: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

A defendant challenging the sufficiency of the evidence pursuant to a Rule 29 "bears a heavy burden" (*United States v. Jackson*, 335 F.3d 170, 180 (2nd Cir. 2003) to persuade the motion court that the jury convicted a defendant on less than sufficient evidence. "The court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna* 183 F3d 122, 130 (2nd Cir. 1999) (internal citations and quotation omitted). In considering a Rule 29 motion, the

court should "review all the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the Government." *United States v. Walker*, 191 F.3d 326, 333 (2nd Cir. 1995). However, the failure to prove even one element of any particular crime is sufficient to require the granting of a motion for judgment of acquittal.

### B.  The Crimes of Conviction and the Elements Needed to Support such convictions

Defendant was convicted of the following crimes (included herein are the elements essential to prove such crime)[2]:

1. Count One of the Superseding Indictment charges defendant DINO SARACINO with Racketeering Conspiracy, specifically Act 3 (Murder Conspiracy - Orena Faction Members); Act 7 (Extortionate Collection of Credit – Peter Guarnieri); Act 12 (Murder Conspiracy – Michael Burnside); Act 14 (Extortionate Extension of Credit); and Act 16 (Witness Tampering – David Gordon). Count One states, in pertinent part:

> In or about and between January 1991 and the present (June, 2008), both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, being persons employed by and associated with the Colombo family, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

The elements of this crime are:

> **First**: that the enterprise alleged in the Indictment was established;

> **Second**: that the enterprise was engaged in, or its activities affect, interstate or foreign commerce;

---

[2] Defendant Saracino was found not responsible for the following racketeering acts and acquitted of the following crimes: Count One Racketeering Conspiracy – Act 8 (Robbery/Robbery Conspiracy – Chemical Bank); Act 9 (Murder/Murder Conspiracy – Richard Greaves); Act 10 (Cocaine Distribution Conspiracy); Act 11 (Murder/Murder Conspiracy – Ralph Dols); Act 13 (Murder/Murder Conspiracy – William Cutolo); Act 15 (Extortion – Johnny Cash); Count Two Murder In Aid-of-Racketeering – Richard Greaves; Count Three Murder in Aid-of-Racketeering – Ralph Dols; and Count Four Murder In Aid-of-Racketeering – William Cutolo.

**Third**: that a defendant was employed by, or associated with, the enterprise; and

**Fourth**: that the defendant you are considering knowingly and willfully became a member of the conspiracy – that is to say that he knowingly and willfully conspired with at least one other person to participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

For a conviction of Racketeering Conspiracy, the jury must unanimously find, in addition to the above elements, that the government has proved beyond a reasonable doubt that a defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. For purposes of this motion, it is assumed, *arguendo*, that there is a *prima facie* case in the trial record to support the above four elements.[3]

(The Racketeering acts for which there was also a substantive crime conviction are addressed with the corollary substantive act, *infra*).

The two Racketeering acts for which there were no corollary substantive crimes charged in the indictment were Murder Conspiracy – Orena Faction members and Murder Conspiracy – Michael Burnside.

With regard to Act 3 – Murder Conspiracy - Orena Faction Members, it is alleged by the Government that:

> In or about between 1991 and 1993, both dates being approximate and inclusive, within the Eastern District of New York, the defendant DINO SARCINO, together with others, did knowingly and intentionally conspire to cause the death of members of the Orena faction of the Colombo family, in violation of New York Penal Law Sections 125.25(1) and 105.15.

The testimony in support of this act was interesting but sparse. Only one date was provided ("1992", p.1019, l.15) for driving around social clubs looking for Orena Members to kill, so it is unknown if any of the other acts occurred anytime within the dates alleged in the indictment. (To use the testimony of Vitale or Tartaglione to bootstrap a time frame to the acts testified to by Dino Calabro invites impermissible speculation.) Calabro testified as to knowledge that "our orders were to shoot to kill" (p. 1018, l.20), but neither he nor anyone else testified that Saracino was present for the issuing of such orders, was present for the discussion of such orders, or did anything *in*

---

[3] Although it is assumed *arguendo* for purposes of this motion that the Government made a *prima facie* case for the four elements of Racketeering Conspiracy, it is not conceded here nor on appeal that such a case was made or that the evidence was sufficient to support this charge. The defendant does not waive the opportunity to argue the sufficiency of the evidence on appeal.

*furtherance of* such orders. On the contrary, the testimony is routinely silent on such essential points. For example, while the evidence states that carried a gun (p. 1019-20), it is separated from any purpose (stated or implied) for carrying a gun. (The mere possession of a weapon would be in violation of state law, but not federal law, in the absence of evidence of a drug conspiracy (of which Saracino was acquitted) or a prior felony conviction (not applicable).) Examples of efforts to locate specific people abound (e.g., p. 1038 re: Joe Scopo) but no purpose is elicited, or alternatively Saracino's participation in an event is missing (e.g., p. 1040 shooting of Thomas Gioeli). Finally, as Joseph Competiello testified, Saracino participated in surveillance ("to be the eyes and the ears" of others), but no purpose was elicited- *specifically regarding any intent to murder Orena Faction Members* (p. 2062).

The absence of evidence specifically tying Saracino to a shared intent to murder Orena Faction members is fatal to sustaining Racketeering Conspiracy Act 3, and thus a judgment of acquittal should be entered.

With regard to Racketeering Act 12 Murder Conspiracy – Michael Burnside, the Government alleges as follows:

> In or about and between April 1998 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, together with others, did knowingly and intentionally conspire to cause the death of Michael Burnside, also known as "Squirts," in violation of New York Penal Law Sections 125.25(1) and 105.15.

The elements of this crime are:

> **First**: that two or more persons knowingly entered into a conspiratorial agreement with the intention to commit the murder identified in the particular racketeering act;
>
> **Second**: that the defendant knowingly became a party to the conspiratorial agreement with the intent to commit the murder identified in the particular racketeering act; and
>
> **Third**: that one of the conspirators performed at least one overt act in furtherance of the conspiracy.

Although there is *prima facie* evidence that Saracino entered into a conspiracy to murder Michael Burnside, the record is utterly devoid of any evidence that such conspiracy was in furtherance of racketeering activity. On the contrary, the evidence indicates only that a conspiracy was to exact revenge on Burnside for the death of Frankie Saracino.[4] As this Court instructed the jury:

---

[4] The tragedy of this crime is that, like Shakespeare's Iago, Joseph Competiello inspires Saracino to murder an innocent person for his own depraved excitement, or worse, in this case to throw blame off his own bloody trail.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, however, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

(Jury instructions, p. 28).

The absence of evidence specifically tying Saracino to a intent to murder Michael Burnside in furtherance of the conspiracy is fatal to sustaining Racketeering Conspiracy Act 12, and thus a judgment of acquittal should be entered.

2. Racketeering Act 7 and 14, and Count Five of the Superseding Indictment charge defendant DINO SARACINO with knowingly and intentionally conspiring to make an extortionate extension of credit. Count Five states, in pertinent part:

In or about and between 2002 and 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant DINO SARACINO, also known as "Little Dino," together and with others, did knowingly and intentionally conspire to make an extortionate extension of credit. (Title 18, United States Code, Sections 892(a) and 3551 et seq.)

The elements of this crime are:[5]

_____

[5] As this offense refers to the state extortion statute where the offense has venue, Criminal Jury Instructions, 2d. for the State of New York, regarding PL 155.30(6), reads as follows:

"GRAND LARCENY IN THE FOURTH DEGREE (Extortion) (E Felony) Penal Law §155.30(6) (Committed on or after Sept. 1, 1967).

Under our law, a person is guilty of Grand Larceny in the Fourth Degree when such person steals property and when the property, regardless of its nature and value, is obtained by extortion.

The term, "steals property," used in this definition has its own special meaning in our law. I will now give you the meaning of that term.

A person STEALS PROPERTY and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or herself [or to a third person], such person wrongfully takes, obtains, or withholds such property from an owner of the property.

Some of the terms used in this definition of "steals property" have their own special meaning in our law. I will now give you the meaning of the terms "property," "owner," "intent to deprive or appropriate," and "wrongfully takes, obtains or withholds."

PROPERTY means any money, personal property, or thing

**First:** In or about and between 2002 and 2008, both dates being approximate and inclusive, within the Eastern District of New York the defendant, Dino Saracino, wrongfully took, obtained, or withheld property from its owner by extortion; and

**Second:** That the defendant did so with the intent to deprive another of the property or to appropriate the property to himself [or to a third person].

---

OWNER means a person having a right to possession of the property superior to that of the person who takes it.

INTENT means conscious objective or purpose. Thus, a person acts with INTENT TO DEPRIVE ANOTHER OF PROPERTY OR TO APPROPRIATE PROPERTY TO HIMSELF OR HERSELF [or to a third person] when such person's conscious objective or purpose is:

(1) to withhold the property or cause it to be withheld permanently, or

(2) to exercise control over the property, [or to aid a third person to exercise control over it], permanently, or

(3) to dispose of the property either for the benefit of himself or herself [or a third person], or, under such circumstances as to render it unlikely that an owner will recover such property.

A person WRONGFULLY TAKES, OBTAINS, OR WITHHOLDS property from an owner when that person obtains such property, regardless of its nature or value, by extortion.

A person obtains property by extortion when he/she compels or induces another person to deliver such property to himself/herself, or to a third person, by means of instilling in him/her a fear that, if the property is not so delivered, the actor or another will:

Select appropriate alternative(s): Cause physical injury to some person in the future; or Cause damage to property; or Engage in other conduct constituting a crime; or Accuse some person of a crime or cause criminal charges to be instituted against him/her; or Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person; or Cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or Use or abuse his/her position as a public servant by performing some act within or related to his/her official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his/her health, safety, business, calling, career, financial condition, reputation or personal relationships.

In order for you to find the defendant guilty of this crime, the People are required to prove, from all of the evidence in the case, beyond a reasonable doubt, both of the following two elements:

1.  That on or about (date) , in the county of (county), the defendant, (defendant's name), wrongfully took, obtained, or withheld property from its owner by extortion; and

2.  That the defendant did so with the intent to deprive another of the property or to appropriate the property to himself/herself [or to a third person].

Therefore, if you find that the people have proven beyond a reasonable doubt both of those elements, you must find the defendant guilty of the crime of Grand Larceny in the Fourth Degree as charged in the _____ count. On the other hand, if you find that the people have not proven beyond a reasonable doubt either one or both of those elements, you must find the defendant not guilty of the crime of Grand Larceny in the Fourth Degree as charged in the _____ count."

Although a gaudy list of methods of violent debt collection methods and tools were elicited at trial (baseball bats, drills, beatings), they were elicited as to other people (Reynold Maragni), as to acquitted conduct (Johnny Cash), or offered merely as an indictment of the depravity of a government's witness (Competiello), but not that Saracino "took property of another by extortion."

The lack of evidence specifically tying Saracino to a taking (or attempted taking) of property of another by extortion is fatal to sustaining Racketeering Conspiracy Act 7 and 14, and Count 5, and thus judgments of acquittal should be entered.

3. Racketeering Acts 16a, 16b, 16c, and Counts 6, 7, and 8 all relate to David Gordon and the Grand Jury subpoenas issued in 2008 for photographs, fingerprints, documents and testimony relating to the Colombo Crime Family.

Racketeering Act 16a and Count Six of the Superseding Indictment charge defendant DINO SARACINO with knowingly, intentionally and corruptly attempting to influence, delay and prevent testimony in an official proceeding. Count Six states, in pertinent part:

> In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly, intentionally and corruptly attempt to persuade, and engage in misleading conduct toward, David Gordon, with intent to influence, delay and prevent the testimony of David Gordon in an official proceeding, to wit: the grand jury (Title 18, United States Code, Sections 1512(b)(1), 2 and 3551 et seq.).

The elements of this crime are:

> **First**: that on or about the date charged, the defendant knowingly and corruptly persuaded David Gordon, or attempted to do so, or engaged in misleading conduct towards David Gordon; and

> **Second**: that the defendant acted knowingly and with intent to influence the testimony of David Gordon in an official federal proceeding or cause or induce another person to hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

Racketeering Act 16b and Count Seven of the Superseding Indictment charge defendant DINO SARACINO with knowingly, intentionally and corruptly attempting to

cause and induce withholding of testimony and records from an official proceeding. Count Seven states, in pertinent part:

> In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly, intentionally and corruptly attempt to persuade, and engage in misleading conduct toward, David Gordon, with intent to cause and induce David Gordon to withhold testimony, records, documents and other objects from an official proceeding, to wit: the grand jury (Title 18, United States Code, Sections 1512(b)(2)(A), 2 and 3551 <u>et seq.</u>)

The elements of this crime are:

> **First**: that on or about the date charged, the defendant attempted to use intimidation on, or to threaten, or corruptly persuade David Gordon, or engaged in misleading conduct toward David Gordon; and

> **Second**: that the defendant acted knowingly and with the intent to influence or prevent the testimony of David Gordon in an official proceeding or caused or induced David Gordon to withhold testimony from an official proceeding.

Racketeering Act 16c and Count Eight of the Superseding Indictment charge defendant DINO SARACINO with knowingly and intentionally attempting to corruptly obstruct, influence and impede an official proceeding. Count Eight states, in pertinent part:

> In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DINO SARACINO, also known as "Little Dino," together with others, did knowingly and intentionally attempt to corruptly obstruct, influence and impede an official proceeding, to wit: the grand jury. (Title 18, United States Code, Sections 1512 <u>et seq.</u>)

The elements of this crime are:

> **First**: that on or about the dates alleged in the Indictment, an official proceeding was pending, was about to be instituted, or was reasonably foreseeable;

> **Second**: that the defendant corruptly obstructed, influenced or impeded the official proceeding, or attempted to do so; and

**Third**: that the defendant acted knowingly and intentionally.

What is clear from the record, that, despite the testimony that subpoenaed witnesses are often corruptly induced or prevented from testifying and giving evidence before grand juries, *this* record shows that to the contrary, Saracino never attempted to influence, delay, or prevent David Gordon from giving testimony or evidence, or complying with the terms of the subpoena. *To the contrary*, it is clear from the evidence that in *this* case, Saracino told Gordon that he must go to the grand jury and surrender the videotape ("you got to give the it [the tape] to them" (p.3134)) and that he should "take the fifth" when he does appear before the grand jury (p. 2987).[6] Since it is clear that Gordon had committed a slew of crimes in Saracino's presence, Saracino's recommending that a unrepentant drug addict/ thief/liar like Gordon should assert his Fifth Amendment privilege seems like a good idea.

The testimony is that David Gordon, the witness, conceded he made an inference from a statement of Saracino that Gordon "should take the fifth" when he appears before a grand jury. (p.3134). However, Gordon also conceded that the wiretap of this same conversation actually contains Saracino's insistence that Gordon surrender the videotape to the grand jury. While it is clear that in a deciding a F.R.Cr.P. 29 motion the Government is entitled to all inferences in their favor, when the actual testimony and evidence is to the contrary of their position, the decision must be made in the defendant's favor. Finally, Gordon offered on his testimony that "we don't talk to the police". (P. 3149, *et seq.*). [7] To infer that Saracino corruptly attempted to keep Gordon from

---

[6]  As this Court instructed the jury:

Moreover, I instruct you that, as a matter of law, influencing another to invoke the Fifth Amendment for an improper purpose is "corrupt persuasion."

(Jury instructions, p. 77)

Conversely, as this Court is well aware, every person who appears before any court, tribunal, or grand jury has a right under the Fifth Amendment to the United States Constitution to remain silent and to not give testimony that might tend to incriminate himself. To advise anyone of such is right, unless it is done so corruptly, is perfectly legal and proper.

[7] Questioning by Braverman (p. 3149-50): "With respect to one of the things that you told us, for instance -- you told us, for instance, about a niece who had been, something horrible happened to her, that you interfered with her talking to the police because it's not about who you were or not about who we are, is that right, you testified about that?

A. Yes.

Q. She was raped or something awful like that?

A. She was, yes.

Q. And you interfered with her trying to capture her attacker because what?

A. Because we didn't do that. What that means is where we come from, we don't talk to the police. It's something you don't do. We usually try to handle things on our own. By my niece talking to the police, it looks bad upon me and I needed to correct it and by correcting it was I had to tell her that she couldn't talk to them, that we would handle it."

testifying, or offering evidence to the Grand Jury is absurd, and no rational trier of fact could conclude that Gordon was intimidated, or even cable of being intimidated on this point.

Further, Racketeering Acts 16b and 16c are duplicative, as are Counts 7 and 8. Therefore the Court should enter a judgment of acquittal for Act 16c and Count 8 independently of its decision on the sufficiency of the evidence arguments, *supra*.

In determining whether two counts are duplicative and thus violate a defendant's rights under the Double Jeopardy Clause of the Fifth Amendment, a court must ask whether each count contains an element not contained in the other. *See*, *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999) (citing, *Blockburger v. United States*, 284 U.S. 299 [1932]; *United States v. Dixon*, 509 U.S. 688, 696 [1993]). If either offense does not contain an element that is not contained in the other, the offenses are considered the same offense for double jeopardy purposes, and a defendant cannot be convicted of both. *See*, *United States v. White*, 2001 U.S. App. LEXIS 28426 at *12 (2d Cir. 2001). Conviction on duplicitous counts constitutes plain error. *Id*.[8]

Here the conduct described in each count is precisely the same-corruptly influencing Gordon to not testify before the grand jury. Thus to sustain convictions on both counts would be to subject Saracino to punishment twice for the same offense.

---

[8] See *Motion for a New Trial*, by Adam Perlmutter, counsel for Thomas Gioeli, filed June 29, 2012.

## Conclusion

For the reasons stated above, defendant Dino Saracino requests that judgments of acquittal be entered on the charges of which he was convicted.

Respectfully submitted,

By:  Samuel M. Braverman, Esq.
Attorney for Dino Saracino
901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395
Email: braverlaw@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA


                -against-                                 08-CR-0240(S-6) (BMC)


THOMAS GIOELI AND DINO SARACINO,


                            Defendants.
--------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION FOR A NEW TRIAL PURSUANT TO F.R.Cr.P. 33


### Introduction

      This Memorandum of Law is submitted on behalf of defendant Dino Saracino in support of his motion for a new trial, pursuant to F.R. Crim. P. Rule 33.  Saracino was convicted, in a joint trial with codefendant Thomas Gioeli, of one count of racketeering conspiracy, and four substantive criminal counts: extortionate extension of credit conspiracy, prevention of testimony, withholding testimony and records, and obstruction of a grand jury proceeding.[9]  Before trial, Saracino moved for severance under Federal Rule of Criminal Procedure 14(a), arguing that Saracino would be denied his constitutional right to a fair trial unless he was tried separately from Gioeli or, in the alternative, he was tried before a separate jury.  At numerous points during trial, Saracino moved for a mistrial on the grounds that the denied motion for severance had led to a denial of due process and fair trial.

      The Court's denial of Saracino's motion for severance denied him due process and amounted to an abuse of discretion. Under controlling case law, he is entitled to a new trial.


### A.  Standard of Review for a Rule 33 Motion for a New Trial

---

[9] Saracino was acquitted of three counts of murder and seven racketeering acts, *supra*.

Upon a defendant's motion, a district court may vacate a conviction and grant a new trial on any or all counts "if the interest of justice so requires." F.R.Cr.P. 33(a). Although it is a high standard, the concern of the motion court is its duty to "prevent a miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 134 (2nd Cir. 2001). By its very language, Rule 33 vests in the motion court broad discretion to set aside a guilty verdict to avoid an injustice. *United States v. Finnerty*, 447 F.Supp.2d 530 (S.D.N.Y. 2007), *aff'd* 533 F.3d 143 (2nd Cir. 2008), (following *United States v. Robinson*, 430 F.3d 537 (2nd Cir. 2005) and *United States v. Sanches*, 246 F.3d 129 (2nd Cir. 1992)). Most importantly, the motion court, in reviewing and weighing the evidence adduced at trial, "is *not* required to view the evidence in the light most favorable to the prosecution." *United States v. Lincoln*, 630 F.3d 1313 (8th Cir., 1980); *United States. V. Coriaty*, 99 Cr. 1251 (S.D.N.Y. July 16, 2001).

**B.  The Denial of the Severance Motions Denied Saracino a Fair Trial**

The standard of review of the denial of a motion for severance is abuse of the trial court's discretion, an "extremely difficult burden" that requires a defendant to show that the denial of the motion caused him "substantial prejudice" "so great as to deny him a fair trial." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991); *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989); *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

Rule 14(a) of the Federal Rules of Criminal Procedure provides:

If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Severance should be granted under Rule 14 "if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534 (1993).  The Second Circuit has held that, when codefendants present antagonistic defenses that are so irreconcilable as to be mutually exclusive, the failure to grant severance amounts to the unconstitutional denial of a fair trial. *Cardascia*, 951 F.2d 474, 484-85 (2d Cir. 1991), *citing United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990).  While an adversarial stance by a codefendant does not, by itself, require severance, "severance should be granted when antagonism at the *essence* of the defenses prevails to such a degree – even without being mutually exclusive – that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty." *Cardascia*, 951 F.2d at 484.

Despite the high standard of proof, Saracino clearly meets this burden in the instant case, because, as explained below, his joint trial with Gioeli subjected him to prejudices substantial enough to deny him his constitutional right to a fair trial.  Despite his counsel's constant objections and repeated motions for severance, a separate jury,

and even a mistrial, the trial court did nothing more than issue curative instructions to the jury, a remedy insufficient to counter the strong prejudice to which Saracino was subjected.

## C.  Statement of Relevant Facts

In June 2008, codefendants Gioeli and Saracino were indicted on various RICO and murder-in-aid-of-racketeering counts.  The specific acts alleged were robbery and murder, as well as several less violent offenses such as obstruction of a grand jury proceeding and withholding testimony and records.  Though both defendants were alleged to be members of the Colombo crime family and to have carried out their offenses in furtherance of that organization's agenda, the criminal acts with which they were charged varied greatly.  Gioeli was alleged to have been a "capo" and "acting boss" of the family during the relevant time periods of the indictment, but Saracino was alleged not to have any managerial roles or responsibilities and was simply a "foot soldier" carrying out orders given to him by higher-up members of the organization.  The two defendants presented different theories of defense; Gioeli, for example, argued that the Colombo crime family did not exist, while Saracino conceded its existence but not his participation in its endeavors.  Because of these distinctions, their alleged histories of membership in the organization and of violence became important issues to both the Government and the defense.

Prior to trial, on April 11, 2011, the Government filed a motion in limine to admit certain evidence of "prior bad acts" of both defendants, pursuant to Rule 404(b) of the Federal Rules of Evidence.  The "bad acts" were intended to attack the defendants' credibility and undermine their arguments that they were not involved, or only minimally involved, in the Colombo family.  After hearing argument on the motion from both sides and both defendants, on July 28, 2011, the Court issued a Decision and Order, largely granting the Government's motion and permitting the admission of the alleged bad acts.  The bulk of the "bad acts" to be introduced at trial related to Gioeli and not to Saracino; in addition, the acts deemed admissible against Gioeli involved a far greater number of alleged incidents of violence than those admitted against Saracino.

Given this ruling, which authorized the exposure of the trier of fact to large amounts of information about Gioeli that were both completely irrelevant and highly prejudicial to Saracino,[10] Saracino filed a motion on August 3, 2011 to sever Saracino's case from Gioeli's at trial, or, in the alternative, to empanel a separate jury for Saracino, pursuant to Federal Rule of Criminal Procedure 14(a).  The very next day, on August 4, 2011, Saracino's motion was denied in its entirety, and the Court ordered both

---

[10] The Court was well aware that any evidence admitted would affect the jury's opinion of both defendants; in fact, the one piece of evidence it excluded on Rule 403 grounds, consisting of allegations that Gioeli had confessed to participated in the murder of a nun, was excluded because it was "incendiary" and "likely to unfairly excite the jurors' emotions against Gioeli *and, by association, Saracino.*"  Decision and Order filed July 28, 2011 at p.18-19 (emphasis added).

defendants to stand trial together, with guilt to be determined for both defendants by one jury.

During the trial, Saracino was repeatedly and substantially prejudiced by the Court's unwillingness to sever the two cases. First, because Gioeli had a substantial motive to present testimony that portrayed Saracino in an unflattering light in order to make himself look less blameworthy, counsel for Gioeli freely elicited from witnesses testimony that was harmful to Saracino and at odds with Saracino's theory of defense. For example, one of the murders with which both defendants were charged was that of Richard Greaves. Saracino's defense theory was that, *inter alia*, without the recovery and identification of a body, the Government was unable to prove that Greaves had been murdered at all. Nevertheless, counsel for Gioeli elicited from a witness on the stand that Greaves had in fact been murdered and that Saracino, along with other members of the Colombo family, had been present at and committed the murder. Although both defendants were ultimately cleared of participation in Greaves' alleged murder, the implication that Saracino was present and an active participant in the Colombo family's criminal endeavors was clearly conveyed to the jury, almost certainly leading to Saracino's conviction on the RICO and obstruction charges.[11]

### D.  Saracino was subjected to "spillover prejudice," and was thus deprived of a fair trial

The term "spillover prejudice" refers to the admission of evidence prejudicial to one defendant that would not have been admissible if he had been tried separately from his codefendant. *Salameh*, 152 F.3d at 115. A defendant is prejudiced by the admission of evidence only if the evidence objected to would have been inadmissible against him in a separate trial. *Id.* In the instant case, Saracino was subject to massive "spillover prejudice" as a result of the Government's introduction of 404(b) "prior bad acts" evidence against Gioeli.

The 404(b) evidence introduced against Gioeli at trial included, among other things, allegations that he had successfully burglarized a bank in Farmingdale, Long Island, and divided the $20,000 in proceeds from the robbery with the other participants (who did not include Saracino); that Gioeli and others (again, not including Saracino) had stolen truckloads of goods from outside of a residence and a Macy's store and leased a warehouse in Long Island to store the goods; and that Gioeli had participated in numerous miscellaneous burglaries, robberies, and assaults in which Saracino was not involved. Evidence of all of these "prior bad acts" were deemed admissible for the purpose of proving the existence and nature of the enterprise and racketeering conspiracy (*see* Decision and Order filed July 28, 2011, EFT Document 1195, at p.13), which Saracino had conceded both in opposition to the Government's motion and in opening statements.

---

[11] As soon as this testimony was elicited, on March 28, 2012, Saracino's counsel moved for a mistrial on the ground that the irreconcilable differences in the defense of the two charged defendants required separate trials or juries. The motion was denied and the one-jury trial continued.

Testimony about these incidents clearly had an impact on the jury, since both Gioeli and Saracino were ultimately convicted of racketeering and conspiracy. However, *none* of the incidents listed above had *anything* to do with Saracino; testimony about them would have been excluded from a separate trial on the grounds that they were irrelevant and highly prejudicial toward Saracino.

The presence of spillover prejudice has routinely been held to deprive a defendant of his Sixth Amendment right to a fair trial and to therefore be grounds for the granting of a severance motion. *See, e.g., United States v. Williams*, 181 F. Supp.2d 267, 303 (S.D.N.Y. 2001) (granting a severance motion on the ground of spillover prejudice and death-eligible counts against co-defendants). Because the Court in the instant case denied the motion for severance, it abused its discretion and must grant Saracino a new, severed trial on the counts on which he was convicted.

### E. The joint trial of Saracino and Gioeli resulted in "dual prosecutors" of Saracino in violation of Saracino's Fifth and Fourteenth Amendment rights

In criminal proceedings in the United States Courts, a defendant is accused by the government and is required to defend himself against only that accusation. The Fifth Amendment entitles him to notice of the charges against him, in the form of a grand jury indictment. U.S. Const. Amend. V. It has long been the settled law of the United States that the charges in a grand jury indictment may not be broadened through amendment except by the grand jury itself. *Stirone v. United States*, 361 U.S. 212, 215-16 (1950), *citing Ex parte Bain*, 121 U.S. 1 (1887). It follows that, when another prosecutor is inserted into the trial, with a different and perhaps conflicting set of charges of which the defendant has no prior notice, and against which the defendant is obliged to defend himself, his Fifth Amendment right to be accused by a grand jury indictment, as well as his Fourteenth Amendment right to procedural due process, are violated.

Such was the case for Saracino in the instant joint trial. Saracino received notice of a discrete set of charges from the Government and was prepared to defend himself against the Government's accusations. However, when his trial was combined with that of his codefendant Gioeli, he was forced to defend himself against Gioeli's defense team's accusations as well – accusations of which he never received prior notice.

For example, Saracino had the opportunity, at summation, to rebut the Government's interpretation of the evidence presented at trial and to offer a theory of defense against the Government's accusations. Saracino did not, however, have an opportunity to rebut the summation of Gioeli's counsel, which contained several accusations against Saracino and an interpretation of the evidence that conflicted directly with Saracino's theory of defense. In addition, because the Government was in a position to hear Gioeli's arguments and theory while it was in the midst of prosecuting Saracino, the Government was given the unfair opportunity to use Gioeli's arguments to attack Saracino and his theory of defense. The Government's suggestion to the jury that there was a "discrepancy" between the theories proffered by "the defendants" worked to

Saracino's disadvantage, suggesting that Saracino and Gioeli should be treated as one defense entity and that the fact that they had not coordinated their defenses represented a weakness in their case.  This situation clearly amounted to a violation of Saracino's right to due process under the Fifth and Fourteenth Amendments.

### F. Both the Court and the Jury Mistakenly Perceived Saracino and Gioeli as Parties to a Joint Defense

Moreover, during trial on March 28, 2012, counsel for Gioeli questioned a witness in such a way as to suggest that Gioeli was waiving the attorney-client privilege that attached during a "joint defense" meeting.  The Court issued an oral order blocking the line of inquiry and warning "the defendants" that "they" should not have attempted this line of questioning without giving the Court advance notice of "their" intention to do so, so that the Court could have counsel present for the witness.

Saracino immediately objected, as Saracino had not participated in any joint defense agreement or meeting that had authorized either the proposed line of questioning or effected a waiver of any privilege.  That evening, Saracino filed a written motion objecting to the line of questioning and to the Court's order and requesting a mistrial (which the Court denied).  The Court – and, presumably the jury – made the mistake that Saracino and his counsel had somehow played a role in a "joint decision" to attack the witness and waive the privilege.  Saracino was forced to defend himself against this collateral attack by his codefendant's counsel without warning, causing a violation of his Sixth Amendment right to a fair trial.

### G. Saracino's Right to Cross-Examine a Cooperating Witness Was Unjustly Curtailed

A defendant's constitutional right to be confronted with the witnesses against him includes the right to cross-examine those witnesses.  U.S. Const. Amend. VI; *Pointer v. Texas,* 380 U.S. 400, 404-05 (1965) ("probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case … the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal").  The Constitution guarantees every criminal defendant the right to present a meaningful defense, including the cross-examination of witnesses testifying against him.  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008) (noting that a criminal defendant has a right to a "meaningful opportunity" to cross-examine adverse witnesses).  Nevertheless, in the instant case, Saracino was prevented from meaningfully cross-examining two of the most important cooperating witnesses against him.

The Government sought by motion in limine to prevent cross-examination of Dino Calabro and Joseph Competiello, both cooperating witnesses, about their involvement in the murder of Frankie Saracino, defendant Dino Saracino's brother.

However, one of the Government's cooperators gave a proffer in which he offered to testify that, because of his annoyance at, among other things, Frankie's involvement in drug dealing, Calabro sought Gioeli's permission to kill Frankie. Gioeli approved, so Frankie was kidnapped, shot, and set on fire.

Defense counsel opposed the Government's motion and sought to cross-examine Calabro and Competiello regarding Frankie's murder for at least three reasons. First, their joint participation in the alleged murder went directly to their credibility as government witnesses and their motive to testify against Saracino. Second, Competiello had previously convinced Saracino that Michael Burnside was responsible for Frankie's death; Saracino was ultimately convicted of a racketeering charge of conspiracy to murder Michael Burnside. Cross-examination as to the conflicting story that Competiello and Calabro had carried out the murder would have gone directly to both Saracino's guilt and Competiello's credibility. Finally, the cooperation agreements between the Government and Competiello and Calabro clearly stated that they were to testify truthfully to all prior acts, good and bad; cross-examination was necessary to explore their truthfulness with regard to prior bad acts.

The Court, however, granted the Government's motion to restrict cross-examination, depriving Saracino of the opportunity to impeach the Government's witnesses with regard to Frankie Saracino's murder. The Court's concern was that prolonged questioning on this issue would be prejudicial to Gioeli, since Frankie's murder was an uncharged prior bad act and not in direct dispute in the instant trial. Because of the Court's ruling, however, defendant Saracino did not have the opportunity to meaningfully defend himself against the charge of conspiracy to murder Michael Burnside – a charge of which he was ultimately convicted. Had Saracino been tried separately from Gioeli, testimony about Frankie's murder would have been relevant, and allowing Saracino to cross-examine Calabro and Competiello would have posed no potential prejudice to Gioeli. This evidence would have been introduced to show Calabro's and Competiello's conspiracy against the Saracino's, and thus a motive to lie.

Finally, it is noted that meaningful cross-examination of Calabro was further inhibited by the Government's failure to produce *Giglio* materials (prior statements that could be used to impeach the witness's credibility, *see United States v. Giglio*, 405 U.S. 150 (1972)) until April 6, 2012, several days after Calabro had testified. On that date, the Government presented the defense with an FBI interview of David Gordon and other witnesses, containing alleged statements of Saracino and prior bad acts of Calabro and Competiello.

Saracino's counsel sent a letter to the Court and the Government on April 7, the day after the delayed disclosure, objecting strenuously to the Government's delay and pointing out that:

> In a case such as this, where the Government has presented little or no physical or forensic evidence tying my client to the murders, but

> instead relies on the testimony of cooperating witnesses, it is imperative
> that I be allowed to engage in cross-examination with complete
> information.  That task, my constitutional and ethical duty, has been
> rendered impossible by the Government's behavior.

(E-mail to the Court from Sam Braverman, counsel to Dino Saracino, April 7, 2012.)

The Court resolved the issue by offering Saracino the opportunity to reopen his cross-examination of Calabro, but Saracino declined to do so.  18 U.S.C. §3500 mandates the production of *Giglio* materials and provides as a remedy for violation the striking of the testimony at issue where the defendant can show substantial prejudice to the defendant as a result.  *See United States v. Adenji*, 31 F.3d 58, 64 (2d Cir. 1994) (assuming a violation of Fed. R. Crim. P. 16, reversal and a new trial is "warranted if the nondisclosure results in substantial prejudice to the defendant," *quoting United States v. Sanchez,* 912 F.2d 18, 21 (2d Cir. 1990).  "Substantial prejudice" means that the untimely disclosure has adversely affected some aspect of the trial strategy.  *Id.*

Here, it is clear that Saracino's trial strategy was severely and adversely affected; in violation of his Sixth Amendment confrontation right, he was unable to cross-examine Calabro with regard to the records that were untimely produced.  The Court abused its discretion in refusing to strike Calabro's direct testimony and requiring the Government to comply with the statute.

Thus is it clear from the record that the joint trial of Saracino and Gioeli, while convenient to the Government and the Court, unfairly and substantially prejudiced Saracino to the effect of denying him the fair trial due to him under the Sixth and Fourteenth Amendments. The simple remedy of separate trials, either in whole or by separate juries, was easily obtainable. The failure to do so was an abuse of discretion and demands a new trial.

**Conclusion**

For the reasons stated above, defendant Dino Saracino requests that he be granted a new trial on the charges of which he was convicted.

Respectfully submitted,


By:   Samuel M. Braverman, Esq.
Attorney for Dino Saracino
901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395
Email: braverlaw@aol.com