

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY & CO

www.FBDMLaw.com
SBraverman@fbdmlaw.com

May 15, 2013

Hon. Brian Cogan
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Dino Saracino*
Dkt: 08-Cr-240

Dear Judge Cogan:

  I write this sentencing memorandum on behalf of Dino Saracino who was convicted after jury trial before this Court of 18 U.S.C. 1962(c), and other related charges. Mr. Saracino faces a statutory maximum sentence of 20 years in prison. The Probation Department has yet to submit a final recommendation despite our filing our objections more than two months ago.
  For the reasons stated below, this Court should sentence Saracino to a guideline range of 135-168 months, or in the alternative, to a sentence not exceeding the statutory maximum sentence of 20 years imprisonment. Further, as the testimony at trial was totally consistent that all decisions of the criminal enterprise where made from the top down, regardless of the decision this Court makes on the numerous outstanding motions and objections of the defendant, this Court should sentence Mr. Saracino to at least one day less than whatever sentence it imposes on Thomas Gioeli.

SARARCINO SHOULD BE SENTENCED TO NO MORE THAN 20 YEARS
AS THIS IS CONSISTENT WITH 18 U.S.C. § 1963, <u>BLAKELY v. WASHINGTON</u>,
<u>UNITED STATES v. BOOKER</u>, AND 18 U.S.C. §3553(a)

A. <u>ACQUITTED CONDUCT</u>
  Sararcino was convicted after jury trial of Racketeering Conspiracy, Murder Conspiracy in furtherance of Racketeering (Orena Factions members and Michael Burnside), Extortionate Extension of Credit, and Witness Tampering. In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004),

1

the United States Supreme Court affirmed its prior rulings in Apprendi v. New Jersey, 530 U.S. 466 (2001) and Ring v. Arizona, 536 U.S. 584 (2002), that for a court to sentence a defendant beyond the relevant statutory maximum according to determined facts, those facts must be found by a jury beyond a reasonable doubt (or confessed to by a defendant, not herein applicable.)

It is well settled that "the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment." See Blakely at 303-04.The sentence a defendant may receive under a "statutory maximum" sentencing scheme is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* Id. The Supreme Court further ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., citing Apprendi, at 490; see also Ring, at 610 (the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt).

Here, the highest charge Mr. Saracino was convicted under RICO for was "conspiracy to murder Orena faction members" which carries a statutory maximum of imprisonment "not more than 20 years or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." See 18 U.S.C.A. § 1963. The United States Sentencing Guidelines recommends a base offense level of 33 for Conspiracy to Commit Murder. See USSG § 2A1.5. According to the USSG Sentencing Table, a base offense level of 33 with one Criminal History Point warrants a guideline range of 135-168 months. See Table USSG.

The jury, by their unanimous verdict, rejected the Government's case as to all the suggested "relevant (acquitted) conduct" which they now seek the Court to consider at sentencing. Since the facts as presented consisted of Government testimony which alleged that Saricino was a principal in these acquitted acts, the only reasonable and rational explanation of the jury's verdict is that the Government's witnesses were unreliable as to the alleged conduct of Saracino. Any other conclusion would put the system of justice in a whirlwind as a jury's role as fact finder would be supplanted by the Court, and a defendant's option of a jury trial would be *de facto* eliminated, a clear violation of this Sixth Amendments rights.

Accordingly, Saracino respectfully requests the Court to reject any acquitted conduct in the computation of his sentence, and to apply the appropriate guidelines of 135-168 months, or in the alternative, to a sentence not exceeding the statutory maximum sentence of 20 years.

B. OBSTRUCTION COUNTS AS PART OF THE RICO CONSPIRACY

In 2008, Saracino was indicted for participating in a RICO conspiracy. The indictment alleged 16 predicate acts, with numerous sub-acts. As part of the RICO conspiracy, the Government alleged that Saracino committed Witness Tampering (Racketeering Act 16) and parsed the predicate act into three sub-acts, Racketeering Acts 16a, 16b and 16c (Prevention of Testimony, Withholding of Testimony and Records, and Obstruction of Grand Jury Proceeding).

At jury trial, Saracino was convicted of Racketeering Acts 16a, 16b and 16c. The Government argues that the Court should sentence Saracino for the Witness Tampering convictions separately and consecutively to the RICO convictions, enabling a lengthier sentence. This request, akin to including the acquitted conduct in the sentencing computation, violates the defendant's right to a jury trial, and well-settled case law. The jury found *beyond a reasonable doubt*, that as a matter of fact, the Witness Tampering convictions were a part of the RICO conspiracy. To include the Witness Tampering convictions as separate from the RICO conspiracy would be to supplant the Court's wisdom of the jury's. The Supreme Court held that a defendant may be sentenced *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* See Blakely, at 303-04.

Accordingly, Saracino respectfully requests the Court to honor the factual findings of the jury and sentence him on all counts concurrently.

C. MERGER OF OBSTRUCTION COUNTS

As discussed above, Saracino was convicted of three Witness Tampering charges: Prevention of Testimony, Withholding of Testimony and Records, and Obstruction of Grand Jury Proceeding. (Racketeering Acts 16a, 16b and 16c). All three Witness Tampering convictions arise from the same incident and the Government utilized the same evidence for all three convictions.

In determining whether two counts are duplicative and thus violate a defendant's right against Double Jeopardy Clause under the Fifth Amendment, a court must evaluate whether each count contains an element not contained in the other. See United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999) citing Blockburger v. United States, 284 U.S. 299 (1932); see also United States v. Dixon, 509 U.S. 688, 696 (1993). If either offense does not contain an element that is not contained in the other, the offenses are considered the same offense for double jeopardy purposes, and a defendant cannot be convicted of both. See, United States v. White, 2001 U.S. App. LEXIS 28426 at *12 (2d Cir. 2001). In addition to the Blockburger test, the Supreme Court has established the Vitale test. See generally Illinois v. Vitale, 447 U.S. 410 (1980). Under the Vitale test, the defendant "would have a substantial claim of double jeopardy" if the same evidence used to prove the first offense is necessary to prove the second offense. See Illinois v. Vitale, 447 U.S. 410, 421 (1980).

Here, although Saracino was convicted of all three counts, the conduct described in each count is precisely the same: corruptly influencing Gordon to withhold testimony from the

3

grand jury. Further, the Government used the same evidence to establish their claim of witness tampering: wired recordings of conversations between David Gordon and Dino Saracino, and testimony of David Gordon. Thus, all three convictions were found using the same evidence and involved the same transaction; the precise situation the <u>Vitale</u> court contemplated.

Therefore, to sustain convictions on all three counts would subject Saracino to punishment three times for the same conduct. Accordingly, Saracino respectfully requests the Court to merge the three counts together so as not to subject Saracino to "triple" jeopardy.

D. <u>OBSTRUCTION COUNTS ARE *DE MINIMIS*</u>

As previously mentioned, Saracino was convicted of three Witness Tampering charges. These convictions related to one transaction/occurrence: corruptly influencing Gordon to withhold testimony from the grand jury.

As the Court is well aware, David Gordon did in fact testify at the Grand Jury; David Gordon did in fact turn over evidence (the wedding video) that the Government sought to give to the Grand Jury; and the Grand Jury did in fact proceed without interruption. Accordingly, the underlying acts supporting the convictions are *de minimis*.

In addition, if the Court finds the Witness Tampering convictions to be outside the scope of the RICO conspiracy (see discussion of these court as part of the RICO), the Court must then consider the *de minimis* nature of the convictions and should apply the sentences therefore concurrently to the RICO conviction. Despite the seriousness of these charges, the nature of the underlying acts must be evaluated and considered in relation to the other more serious charges of which the defendant was acquitted.

The court in weighing these acts should recognize that none of the alleged acts had any effect on this investigation or the Government's case. Accordingly, Saracino respectfully request the Court to recognize the *de minimis* nature of the Witness Tampering convictions and order the sentences to run concurrently.

E. <u>18 U.S.C. § 3553(a) AND UNITED STATES v. BOOKER</u>

The Supreme Court held in <u>Booker</u> that the Sentencing Guidelines were no longer mandatory. Instead the district court has the duty to 'consider' the recommended guideline range along with the other factors listed in §3553(a). Pursuant to 18 U.S.C. §3553(a) the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Thus, the Court must consider: (1) the nature and circumstance of the offense and history and characteristics of the defendant; (2) the need of the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public; (3) available sentences; (4) Guidelines ranges, and (5) the need to avoid sentencing disparities.

The essence of Booker is that courts may no longer uncritically apply the guidelines without regard to the express statutory mandate of 18 U.S.C. § 3553(a). Booker demands that courts consider all the factors in § 3553(a). The statutory directive under § 3553(a)(1) that a court consider the "history and characteristics of the defendant" takes on new meaning in light of Booker. Thus, for example, the Guidelines previously prohibited consideration of a defendant's age, see U.S.S.G. § 5H1.1; his education and vocational skills, see § 5H1.2; his mental and emotional condition, see § 5H1.3; his physical condition, including drug or alcohol dependence, see § 5H1.4; his employment record, see § 5H1.5; his family ties and responsibilities, see § 5H1.6; civic and military contributions, see § 5H1.11. In discharging its sentencing responsibility today this Court is at liberty to consider all of these factors, and any others this Court deems relevant to fashioning a sentence appropriate to this defendant and this criminal circumstance. The Second Circuit has recently held that the district court has wide discretion to fashion the sentence it feels is correct, given the nature and circumstances of the defendant and the crime committed. See United States v. Jones, 460 F.3d 191, 195 (2nd Cir., 2006).

In fashioning that sentence, the Court's duty is not to impose a "reasonable" sentence, but rather one that fits the defendant and the crime (the factors under §3553(a) and is no greater than necessary to promote the ends of sentencing.) See United States v. Williams, Dkt No. 05-4928-cr (L) & 05-4956-cr (2nd Cir. Jan. 30, 2007) ("District Courts are to impose sentences pursuant to the requirements of §3553(a)-including the requirements of §3553(a)'s parsimony clause-while appellate courts are to review the sentences actually imposed by district courts for reasonableness.")

a. The nature and circumstance of the offense and history and characteristics of the defendant

18 U.S.C. § 3553(a) requires the sentencing Court to consider history and characteristics of the defendant. For the reasons stated in Saracino's objections to the Criminal History Category calculation in the PSR, he is a criminal history category I.

Please find attached a letter from Saracino's father, attached hereto as Exhibit "A", documenting the harsh conditions his family is subject to due to the absence of Saracino for the past 5 years.

b. The Guideline Ranges

18 U.S.C. § 3553(a) requires the sentencing Court to consider the Guideline range as a factor when sentencing a defendant. The highest charge Mr. Saracino was convicted of under RICO was "conspiracy to murder Orena faction members" which carries a statutory maximum of imprisonment "not more than 20 years or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." See 18 U.S.C.A. § 1963. The United States Sentencing Guidelines recommends a base offense level of 33 for Conspiracy to Commit Murder. See USSG § 2A1.5. According to the USSG Sentencing Table, a base offense level of 33 with one Criminal History Point warrants a guideline range of 135-168 months. See Table USSG.

5

Accordingly, Saracino requests that the Court consider the guideline range of 135-168 months.

c. <u>The need to avoid sentencing disparities</u>

18 U.S.C. § 3553(a) requires the sentencing Court to consider the need to avoid sentencing disparities. Accordingly, Saracino requests that the sentence he receives be less than Thomas Gioeli. Furthermore, as indicated by the first draft of the Pre-Sentence Report, none of Saracino's co-defendants have been sentenced to be more than 10 years in prison although Saracio was convicted of no charge more serious that of his co-defendants.

Throughout the course of the Government's investigation into the Colombo crime family, and the subsequent jury trial, Gioeli has always been characterized as a "street boss" and the "captain of captains" during his tenure in La Cosa Nostra. Saracino has always been labeled as a "soldier." The Colombo crime family, as thoroughly documented during the investigation and trial testimony, consists of crews of Soldiers who are directed by Captains.

Here, as consistent with the Government's witnesses sworn testimony (see trial transcript of Joseph Vitale, Dino Calabro, Sebi Saracino, Joseph Competiello, and Reynolds Marangi) every action Saracino took during his time with the Colombo crime family was at the behest of Gioeli and other other ranking members of the Colombo crime family. To sentence Saracino to a lengthier term of incarceration than Gioeli would be inconsistent with the statutory intent.

F. <u>Conclusion</u>

For all the aforementioned reasons, Saracino respectfully requests the Court to sentence him to a guideline range of 135-168 months, or in the alternative, a sentence not exceeding the statutory maximum of 20 years imprisonment, and conclude that he is unable to pay any fine. Saracino will address the memorandum of the Government when it is received. Saracino further reserves the right to address the Court at sentencing and upon the decision on the outstanding motions and objections.

Respectfully submitted,

_____
Sam Braverman, Esq.
FASULO BRAVERMAN & Di MAGGIO
901 Sheridan Avenue
Bronx, New York 10451