```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   UNITED STATES OF AMERICA,                                :    **MEMORANDUM DECISION**
                                                            :    **AND ORDER**
                                                            :
                       - against –                          :     08-cr-240 (BMC)
                                                            :     17-cv-2289 (BMC)
                                                            :
   DINO SARACINO,                                           :
                                                            :
                                     Defendant.             :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Dino Saracino, a member of the Colombo organized crime family, seeks habeas corpus relief pursuant to 28 U.S.C. § 2255 from his conviction by jury, after a seven-week trial, of one count of racketeering conspiracy, one count of loansharking, and three counts of obstruction. The jury found Saracino guilty of five predicate acts as part of the racketeering conspiracy, including murder conspiracy, witness tampering, and loansharking. Saracino raises three points of error, all alleging that his trial counsel was ineffective because he failed to make the arguments that: (1) at sentencing, this Court's "relevant conduct" analysis was erroneous; (2) the facts of this case were legally insufficient to support his conviction for "corrupt persuasion" under 18 U.S.C. § 1512; and (3) his convictions for racketeering and loansharking violate the Tenth Amendment because murder conspiracy and extortion are local crimes, not national crimes.

The facts will be set forth below as necessary to address each of Saracino's points of error. None of them have merit, so his motion is denied.

## I. Standard for Ineffective Assistance

The Sixth Amendment guarantees a criminal defendant's right to the assistance of counsel. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective-assistance-of-counsel claim if it fails to meet either prong. Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (citing Strickland, 466 U.S. at 687, and Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011)).

## II. Erroneous Federal Sentencing Guidelines Analysis

### A. Background

Saracino's first point of error implicates USSG § 1B1.3(a)(1)(B). The 2013 version of the Guidelines applicable at Saracino's sentencing included as "relevant conduct," "in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." One of the issues at sentencing was whether Saracino was responsible for a particular murder based on his conviction for the predicate act of conspiracy to murder members of the Orena faction of the Colombo crime family. This predicate act related to the "Colombo family war," an internecine conflict between the Persico and Orena factions of the Colombo family in the 1990s, in which Saracino and his

2

crew were members of the Persico faction, and in which eleven Colombo members between the two factions were killed.

The particular murder for which Saracino was held responsible at sentencing was that of Joseph Scopo, a member and underboss of the Orena faction (he is erroneously referred to in some of the presentencing submissions as "Scapo"). Saracino was not charged with killing Scopo, but Saracino's boss, Thomas Gioeli, had tasked him with reconnaissance on Scopo, and Saracino had reported on Scopo's location and movements. Scopo was later murdered.

The nearly 100-page Presentence Investigation Report attributed responsibility for the Scopo murder to Saracino (among others). It excerpted the testimony of cooperating witnesses at trial who discussed the Colombo family war and Saracino's role in it. According to the PSR, Saracino was a driver for Gioeli, and served as his "eyes and ears" to gather intelligence on the location of Orena faction members, including Scopo. Saracino was of particular value to this operation because he was not known to many Orena faction members. Saracino was one of several Persico faction members that kept surveillance on Scopo, both at a café that Scopo was known to frequent and at Scopo's house. The PSR concluded its discussion of this point with the following:

> Among the casualties during the Colombo family war was Joseph Scapo, who at the time of his murder was the underboss of the Colombo family faction loyal to Orena and one of the individuals who had been targeted by Gioeli, Saracino and others in the faction loyal to Persico. On October 20, 1993, members of the Persico faction fatally shot Scapo as he arrived at his residence (by that time, he had moved from Brooklyn to Queens). It was widely believed that Scapo's murder ended the Colombo family war and solidified the control of the Colombo family by the Persicos. Although Gioeli and Saracino did not personally participate in the Scapo murder, they were active participants in the war for the Persico side and personally participated in targeting Scapo (by searching for and surveilling him, see above).

The PSR then applied these statements to calculate the Guidelines range:

3

> Although Gioeli and Saracino did not personally participate in the Scapo murder, they personally participated in targeting Scapo. They, therefore, should be held responsible for the murder. . . .
>
> Per Guideline 2A1.5(c)(1), since the offense resulted in the death of a victim, Guideline 2A1.1 is applied, which provides a base offense level of 43. As stated above, Saracino's role in Count 1, Racketeering Act 3 [the Orena faction murder conspiracy] was that of a manager, who directed the activities of others underneath Gioeli. As such, the Probation Department has determined that a 3-level aggravating role adjustment per Guideline 3B1.1(b) is appropriate for each of the acts in which he was involved.

Before sentencing, trial counsel expressly objected to the statements in the PSR that attributed responsibility to Saracino for the Scopo murder. Within a voluminous objection of 45 pages, he stated:

> ¶¶39-45 [of the PSR]. Objection to the conclusion that Mr. Saracino should be held responsible for the death of Joseph Scopo, in addition to six unnamed Orena faction members, three unnamed Persico faction members, and one unnamed innocent bystander during the Colombo family war. *Further, there is no testimony that Joseph Scopo was murdered by the Persico faction.* In [this] connection, Mr. Saracino demands that a hearing pursuant United States v. Fatico, 603 F2d 1053 (2d Cir. 1979), be held to determine the basis of these murders.

(Emphasis added). Trial counsel greatly expanded on this objection in addressing the PSR's calculation of the offense level for the Guidelines range, particularly emphasizing the point that a Fatico hearing was required if Saracino was going to be held responsible for the Scopo murder.

Seeking to refute this point and establish that Scopo was murdered as part of the Colombo family war, the Government submitted two types of evidence. The first was the testimony by the cooperators at Saracino's trial in which they identified Saracino as a Persico factionalist and Scopo as an Orena factionalist, and stated that the Persico faction had identified Scopo as a prime target and that Saracino had engaged with the cooperators in reconnaissance of Scopo. The second type of evidence was testimony given by other Persicos who had killed Scopo as part of the Colombo family war. Two of them said they killed Scopo in guilty pleas,

4

and one, Anthony Russo, testified to it as a cooperator at trial in another case, <u>United States v. Guerra</u>.

At the sentencing hearing, this Court started the Guidelines calculation by observing that if Saracino was responsible for Scopo's death, his Guidelines range would be life (reduced to the 100-year statutory maximum). The following dialogue then ensued:

> TRIAL COUNSEL: As you say, I've written quite a bit on this so I'm not going to reargue it verbatim here. The one thing I would just -- at this point, Judge, I don't even have -- it certainly never was an issue to present to the jury under any kind of fact finding determinations from the jury about a death, foreseeability of a death and whether or not such a death was effectively chargeable to Mr. Saracino.
>
> THE COURT: I agree with you that I'd have to make some fact finding in order to determine foreseeability and I understand it is your position that even as to that fact finding, it's not constitutional for me to do that but I really think the case law is clearly against you on that.
>
> TRIAL COUNSEL: I understand, Judge. I raise the issue again to that point. I also don't know who the person is that my client would be responsible for.
>
> THE COURT: I think the government has told you that, the government has told you that in its submissions.
>
> TRIAL COUNSEL: I understand that, Judge, but nonetheless -- well, I mean we don't have the connection. The Court I think still has to make a fact finding connection to bring that murder to my client.
>
> THE COURT: Well, what do you mean by a fact finding connection? I'm agreeing with you that it has to be reasonably foreseeable to him. That does not mean that he has to participate in or know about it. It just has to be if you enter -- if you're in the Colombo war, you're in a conspiracy to kill Orena faction members, it's foreseeable, it seems to me, if Orena faction members are in fact killed, that's what you entered the conspiracy for.
>
> TRIAL COUNSEL: *I would say, Judge, if they are killed as the effect of the turf war between the two.*
>
> THE COURT: Correct.
>
> TRIAL COUNSEL: *If they're killed for other reasons, and people were killed for other reasons including the establishment of the Colombo crime family, that is still not necessarily foreseeable as a predicate act under racketeering.*
>
> THE COURT: Okay. Well, I think the guideline picks that up because it says that the murder has to occur as a result of the conspiracy, that's what has to be shown. So, there is that causative effect. Now, having said that, although I'm not going to do this, I could almost take judicial notice that deaths occurred as a result of the

5

> Orena murder conspiracy, it is almost common knowledge, but not doing that, I'm not taking judicial notice of that, I'm basing this solely on the trial record and the other materials that the government has submitted, I am clearly convinced by the evidence and when I say that, I mean I'm using a clear and convincing evidence standard, whether I have to or not, that at least one death occurred, I suspect there was more than one, but I'm finding one death occurred as a result of the Orena murder conspiracy. *Scopo died as a result of that conspiracy.* He was an underboss of the Orena faction. So, when this defendant conspired to kill Orena faction members, Scopo's death was reasonably foreseeable. Indeed, there's a closer link than that because the record shows that this defendant [was] engaged in surveillance of Scopo, even though, again, his personal involvement is not required, just foreseeability. So, you have the confessed killers and conspirators pleading guilty to it or being convicted of it.
>
> Now, the defendant in his papers has asked me to conduct a Fatico hearing or has at least said I can't make that finding without a Fatico hearing but I have not been given a clue as to what additional evidence would be put into that hearing. I don't see a need for a Fatico hearing because some of the killers were extensively cross-examined at trial in addition to pleading guilty to their own involvement. So, if I have such a hearing, the issue wouldn't be whether this defendant was involved directly in the Scopo murder, the government does not contend that he was, *the hearing would simply be whether Scopo died as a result of the conspiracy for which this defendant has been convicted by a jury.* I just think the evidence on that is overwhelming and all points one way. It does not matter to me that Guerra was acquitted despite the cooperator Russo's testimony. *The question again is whether Scopo was murdered as a result of the conspiracy.* Given the extensive evidence that's been placed before me, that fact is practically beyond dispute and it is thoroughly established by the materials that I have.

(Emphasis added).

### B. Motion for Relief under 28 U.S.C. § 2255

Saracino's argument that trial counsel was ineffective by failing to argue the proper application of USSG § 1B1.3(a)(1)(B) is opaque. It appears to rest on the premise that the murder of Scopo was not within the Orena faction murder conspiracy of which Saracino was convicted, and that therefore trial counsel was ineffective for failing to put the Government to its proof. Saracino argues that the Court, without objection from trial counsel, skipped a step – although it found that Scopo's murder was "reasonably foreseeable" to Saracino, it never made the predicate finding that Scopo's murder was part of the Orena murder conspiracy of which

6

Saracino was convicted – the "jointly undertaken criminal activity." Saracino then argues that if the Court had considered the "jointly undertaken" prong, it would have concluded that Saracino could *not* be held responsible for Scopo's murder, and that there is therefore at least a "reasonable possibility" that Saracino would have received a lower sentence.

Saracino's argument makes little sense in the context of this record. Whether or not the Court erred, I cannot find any omission by trial counsel, objectively unreasonable or otherwise. Although neither he nor the Court used the phrase "jointly undertaken criminal activity," the emphasized language quoted above shows that trial counsel specifically challenged the Government's claim that Scopo was killed as part of the Orena murder conspiracy of which Saracino had been convicted. Trial counsel's written objection in the PSR asserted: "[T]here is no testimony that Joseph Scopo was murdered by the Persico faction." His argument at the sentencing hearing sought to remind the Court that Scopo's murder could only be considered "if they [*i.e.* Orena faction members like Scopo] are killed as the effect of the turf war between the two . . . . If they're killed for other reasons, and people were killed for other reasons including the establishment of the Colombo crime family, that is still not necessarily foreseeable as a predicate act under racketeering."

Constitutionally effective assistance of counsel does not require the use of particular terms as long the essence of the argument is before the court. That trial counsel chose to refer to the issue at the sentencing hearing in terms of foreseeability rather than "jointly undertaken criminal activity" simply reflected that on the facts of this case, there was little, if any, practical difference between the two. The overlap in these requirements in Saracino's case may explain why this portion of his habeas brief devolves into an argument about the sufficiency of the Government's evidence that Scopo's murder was part of the Orena murder conspiracy. Indeed,

7

much of the argument sounds like he is rearguing the foreseeability requirement, even though he has couched his arguments in terms of "jointly undertaken criminal activity." The factual issue at sentencing was the adequacy of that proof; trial counsel asserted it was insufficient, and the Court found otherwise.

To the extent Saracino asserts that his trial counsel was deficient for failing to object to a procedural defect – the Court's failure to use the words "jointly undertaken criminal activity" – it is a technical and fruitless point. The Court's findings were broad enough to support that label, and the Court clearly would have made the finding using those particular words if trial counsel had objected to the phrasing. In fact, I see no reason why the very argument that habeas counsel raises now could not have been raised on direct appeal, whether it is the substantive argument that the proof was inadequate to show that Scopo's murder was within the scope of the Orena murder conspiracy, or the procedural argument that the Court failed to use the required phrase. The point was as preserved as it needed to be by trial counsel's oral and written arguments. See Fed. R. Crim. P. 52(b); United States v. Huggins, 844 F.3d 118, 122 n.3 (2d Cir. 2016).

Saracino relies on cases, principally United States v. Studley, 47 F.3d 569 (2d Cir. 1995), in which, unlike here, the facts create a very real distinction between the foreseeability and "jointly undertaken criminal activity" requirements in the Guidelines. These cases invariably involve financial frauds where the question is whether a minor player is responsible for the full financial loss caused by the overall conspiracy. That issue has nothing in common with Saracino's conviction for murder conspiracy in aid of racketeering.

Studley itself demonstrates this distinction. Unlike Saracino's broad murder conspiracy conviction, the offense of conviction in Studley – a $249 substantive count of mail fraud – could hardly have been narrower. In the context of that very narrow crime, the Second Circuit held

8

that the uncharged, overall boiler-room conspiracy, of which the defendant was only a small-time salesman, was not part of the Studley's "jointly undertaken criminal activity."

It is one thing for a defendant like Studley, who was convicted of a small, substantive offense, to be tagged with, as relevant conduct, an enormous conspiracy of which he has not been convicted; it is quite another for a defendant, like Saracino, who was convicted of an enormous conspiracy, to be tagged with one of its smaller accomplishments. In the former scenario, it might be "reasonably foreseeable" to the defendant that other salesmen and managers are involved in the scheme, but his little piece of conduct is not "jointly undertaken criminal activity" with them. In contrast, in the latter scenario, the focus of the inquiry is on issues like "in furtherance" and reasonable foreseeability because the scope of the conspiracy is contiguous with the conduct for which defendant was convicted – "jointly undertaken criminal activity" is subsumed by these other requirements. That was the case here, and Saracino's trial counsel properly recognized it.

It is therefore unsurprising that the contrast between Saracino and Studley is so pronounced. Unlike Studley, Saracino did not, and could not, act independently. As a made member of the Colombo family, acting independently – disregarding instructions or acting without sanction – could have gotten him killed, as the evidence showed happened to others. (Like his former crewmate Richie Greaves, who Saracino, following orders, shot to death in his basement just because Greaves was planning on moving to Arizona with his girlfriend.) All of the conspirators, including Saracino, were entirely interdependent, not just so they could achieve the object of the conspiracy (killing Orena members), but for their own survival. Saracino was vitally interested in helping the Persico faction succeed, and did so when his reconnaissance helped accomplish the Scopo's murder. We are thus not talking about "mere awareness,"

9

Studley, 74 F.3d at 575. Studley's concerns about whether the defendant's conduct was within the scope of his criminal agreement do not fit smoothly into this life-or-death context.

Saracino's argument founders on prejudice grounds as well: any alleged Guidelines miscalculation based on holding him responsible for Scopo's murder would not have affected his final sentence. Saracino is a multiple murderer – he killed at least three other people as part of his membership in the Colombo family, although not as part of the Colombo war. The Court so found that as a fact by clear and convincing evidence at the sentencing hearing, even though the jury, in what I believe was a compromise verdict, acquitted him of those particular murders. Saracino points to the Court's statement at sentencing that it was not comfortable using that acquitted conduct to drive the imposition of a life sentence (more precisely, the statutory maximum of 100 years), as the Guidelines recommended, and that is correct. However, the Court also stated that it would use those murders for 18 U.S.C. § 3553(a) purposes, and it did.

The Government urged the 100-year Guidelines sentence; the Court rejected that and sentenced Saracino to 50 years. The Court rejected trial counsel's proposed Guidelines range with a high end of 168 months as a wholly inadequate sentence for a made Mafia member convicted of two murder conspiracies, extortion, witness tampering, obstruction, and who, in addition, as it found, had committed at least three murders. The Court then concluded that a 50-year sentence was appropriate given that Saracino did not offer any meaningful mitigating factors – as the Court observed at sentencing, Saracino is a Mafia hitman, and that's about all there is to him. Even if trial counsel had made and succeeded on the particular argument which habeas counsel now asserts (which, as noted above, I do not believe trial counsel would have), the § 3553(a) factors would have compelled the same 50-year sentence the Court imposed.

As a result, there was no objective unreasonableness in the trial counsel's failure to phrase the argument in the terms that Saracino now says he should have used. There was also no prejudice to Saracino because his sentence would have been the same in any event.

### III. Legal Insufficiency of Conviction for "Corrupt Persuasion"

Saracino's conviction for corrupt persuasion, 18 U.S.C. § 1512, arose from his urging Mafia associate David Gordon to invoke the associate's right against self-incrimination when Gordon was subpoenaed to appear before a grand jury. Saracino's purpose – viewing the facts in the light most favorable to the Government – was to deter Gordon from implicating Saracino and other Colombo family members before the grand jury. Relying on cases from other Circuits, Saracino contends that the Government was required to prove more, and that trial counsel was ineffective for not raising the point. Specifically, he argues that under these out-of-circuit cases, the statute requires something evil or immoral about the attempt at persuasion, like intimidation, and because the Government did not prove that additional element, his counsel was ineffective for not seeking dismissal of the charge (presumably at the close of the Government's case, although Saracino does not say when it should have been raised).

This argument fails. The principal reason is that, as Saracino alludes to early in his motion but does not expressly acknowledge until nearly the end of the point, Second Circuit law is firmly against him. His last subheading (finally) owns up to this: "The Second Circuit Misconstrues Corrupt Persuasion." Its decision in United States v. Gotti, 459 F.3d 296, 342-43 (2d Cir. 2006), and the predecessor decisions that Gotti cites, impose no requirement on the Government other than proving an intent to obstruct the proceeding, even if the witness has the legal right to invoke his privilege. As Saracino also acknowledges, the Second Circuit is not the

only court to so construe the statute; the Eleventh Circuit sees it the same way. See United States v. Shotts, 145 F.3d 1289, 1301 (11th Cir. 1998).

For this reason, if trial counsel had moved to dismiss the charge, the Court would have been required by *stare decisis* to deny that motion based on Second Circuit authority. Strickland does not require trial counsel to make objections contrary to controlling authority in the court where the case is being tried, at least if there is no pending case on the circuit split before the Supreme Court. There is nothing objectively unreasonable about presuming the application of controlling authority. See Garcia v. United States, 15 F. Supp. 2d 367, 379 (S.D.N.Y. 1998); see also United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990). Nor was Saracino prejudiced, for any such motion would have failed.

The second reason that there cannot be an ineffective-assistance-of-trial-counsel claim on these facts is that even under the more demanding standard required in other circuits, the proof here was more than sufficient to satisfy it. This was not just advice to invoke the privilege by an interested target of the grand jury. This was a "suggestion" from a Mafia hitman who the witness knew was a Mafia hitman. Gordon surely knew that implicating Saracino and other Colombo family members before a grand jury carried with it a very real risk of death. To remind him of this was the purpose of Saracino's "advice." The implicit threat of bodily harm would be sufficient under any Circuit's law, and trial counsel was again not objectively unreasonable in failing to raise a meritless point.

### IV. Tenth Amendment Violation

Saracino's final argument is based entirely on United States v. Bond, 134 S. Ct. 2077 (2014), in which the Supreme Court invalidated a conviction under the Chemical Weapons Convention Implementation Act, 18 U.S.C. § 229. In Bond, the defendant was convicted of

12

violating the statute after she put chemicals on the car door handle, mailbox, and front door knob of her husband's pregnant lover, hoping the chemicals would cause her husband's lover to develop an uncomfortable rash. The Court held, for what I think are obvious reasons, that this was extreme federal prosecutorial overreach, and that this domestic-relations crime was too local to trigger federal concerns. It therefore invalidated the conviction under the Tenth Amendment, holding that prosecution of such local matters is reserved to the States.

It is hard to believe that Saracino is actually asserting that the Mafia's lifeblood – extortion and murder in aid of racketeering – are in any way comparable to the facts of Bond. But he is. And so I have to reject the argument as frivolous. The effects of the Mafia on interstate commerce are well documented, the statute has been repeatedly upheld as a valid exercise of that power, see, e.g., United States v. Feliciano, 223 F.3d 102, 118-19 (2d Cir. 2000), and Saracino's crimes of conviction are squarely within the class of criminal activity with nationwide implications that Congress sought to deter. This case has nothing in common with Bond.

## CONCLUSION

Saracino's motion for habeas corpus relief [2036] is denied. Saracino is further denied a certificate of appealability as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Fed. R. App. P. 22(b); Lucidore v. N.Y. State Div. of Parole, 209 F. 3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore i*n forma pauperis* status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                                                                                       U.S.D.J.

Dated: Brooklyn, New York
        October 5, 2017